**\*Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                                          :
OORAH, INC.,                              :
                                          :          Civil Action No.: 08-2202(FLW)
                    Plaintiff,            :
                                          :               **OPINION**
        v.                                :
                                          :
MARVIN SCHICK, et al.,                    :
                                          :
                    Defendants.           :
_____:

**WOLFSON, District Judge:**

Before the Court is a motion to dismiss Plaintiff Oorah, Inc.'s ("Plaintiff" or "Oorah") Complaint filed by defendants, Marvin Schick ("Schick"), The Jewish Foundation School ("JFS") and the Rabbi Jacob Joseph School ("RJJ")(collectively, "Defendants").  Plaintiff initiated the instant suit essentially alleging that Schick, on behalf of RJJ and JFS, entered into a "non-disparagement agreement" with Oorah as a condition to Oorah's participation in an arbitration proceeding between the parties, and that such agreement was breached when Schick subsequently publically criticized Oorah.  On that basis, Plaintiff alleges claims for breach of contract and promissory estoppel.  The Complaint also seeks confirmation of the arbitration award.  Procedurally, Defendants move to dismiss for want of personal jurisdiction.  Defendants also move to dismiss for Plaintiff's failure to state a claim.  For the reasons set forth below, the Court lacks personal jurisdiction over Defendants; however, instead of dismissing the action, this case shall be transferred to the United States District Court for the Eastern District of New York**.**  In so doing, the Court does not consider the merits of

Defendant's motion that Plaintiff has failed to state a claim.

## BACKGROUND

For the purposes of this Motion, the Court shall recount the relevant facts derived from the Complaint.   Oorah is a New Jersey not-for-profit corporation conducting business in Lakewood, New Jersey.  Oorah's primary goal is to assist Jewish people in need by providing for the physical and spiritual needs of distressed and immigrant Jewish youth and their families.  Accordingly, Oorah provides scholarships, basic food staples, nutritional products, clothing, among other things, to help ease the financial burden of these families.  Among Oorah's programs is one that enables children to enroll in orthodox Jewish day schools, or yeshivas, where they receive a full religious and general education through high school.

Defendant Schick is a New York resident residing in Brooklyn, New York.  He is the president of JFS in Staten Island, New York and of defendant RJJ.  The JFS is owned and operated by RJJ and both are operated by Schick.  See Schick Aff. ¶¶ 3-4.  Schick is known for being outspoken in his views on Jewish education.  RJJ is a not-for-profit organization organized under the laws of New York, and Plaintiff asserts that it does business in Edison, New Jersey and Staten Island, New York.  However, as defendant Schick makes clear in his Affidavit, the business affairs of the Edison institution - a religious boys' high school, or mesivta - are conducted by a separate New Jersey corporation ("NJ RJJ"), and that for all intents and purposes RJJ and NJ RJJ are separate business units with no overlapping employees or finances.  Schick also attests that his involvement with the NJ RJJ consists of "approximately" two visits a year.  See Id. ¶¶ 4-7.[1]

---

[1]Plaintiff disputes the accuracy of Schick's statement regarding the relationship between RJJ and NJ RJJ entities.  Specifically, Plaintiff points to a November 2007 "RJJ Newsletter" which published Schick's allegedly substantial involvement with the operation and promotion of

Oorah enrolled many of the students it sponsored to the JFS in Staten Island. Beginning in early 2006, allegedly a disagreement arose over the tuition rates Oorah pays to the JFS for the children it sponsors. Consequently, Plaintiff alleges that, in early 2006, Schick began making public statements criticizing Oorah, as well as written monetary demands on parents of students enrolled in the JFS under Oorah's auspice. As the parties were unable to resolve the matter, Schick requested, in September 2006, that Oorah's representatives meet with him and members of the JFS Board before Rabbi Yaakov Lehrfeld. The parties agreed prior to this meeting that Rabbi Lehrfeld's decision would be binding. Unfortunately, the parties did not come to an agreement.

Allegedly, as the dispute percolated, Schick began to approach orthodox Jewish communal leaders privately with his criticisms of Oorah. In response to Schick's actions and pursuant to Jewish legal procedure, Oorah referred the dispute to a rabbinical court or arbitration board, referred to as Machon le'Hora'ah, in Monsey, New York. Subsequently, Schick was served with a "hazmanah," or summons, but Schick allegedly never responded to the summons. In November 2006, a second summons was issued and this time Schick responded with several objections and demands, as well as a counterclaim. However, Schick ultimately refused to appear before the Machon le'Hora'ah.

Finally, in April 2007, the parties agreed to submit their dispute to a specially-constituted bais din, i.e., rabbinical arbitration board or court, consisting of three prominent orthodox rabbinic figures (the "Bais Din"). On April 29, 2007, Schick, on behalf of JFS and RJJ entered into an Arbitration Agreement with Oorah. Essentially, the agreement obligated the parties to accept the decision of the Bais Din as conclusive and binding, and that the decision would be civilly enforceable. In addition, during the course of the arbitration proceeding and before the ruling was issued by the Bais Din, the

---

the Edison institution, and the unified nature of RJJ and NJ RJJ.

parties also entered into a mutual agreement of non-disparagement in connection with the proceedings (the "Non-Disparagement" Agreement).  The agreement was hand-written and signed by Schick, which read in part: "This is [to] acknowledge that the Rabbi Jacob Joseph School shall full[ly] accept the pask [ruling] of the [Bais] Din.  Furthermore, subsequent to the Din Torah [arbitration proceedings] we will not write or transmit in any forum charges against Oorah." <u>See</u> the Non-Disparagement Agreement.  On April 30, 2007, the Bais Din ruled that Oorah was obligated to pay $2,700 for each Oorah-sponsored student in the JFS.  However, on May 28, 2007, the Bais Din issued a "Clarification" of its earlier ruling, making it clear that the $2,700 per child figure was a total figure and was not meant to suggest Oorah had to pay $2,700 per child regardless of parental contribution.

Before the "Clarification" was issued, Plaintiff alleges that Schick made strong accusations against Oorah for not complying with the Bais Din's initial ruling.  Such accusations were subsequently addressed by in the "Clarification" issued by the Bais Din.  It stated: "With great pain, we have heard that Oorah has been accused of wrongdoing by failing to comply immediately with or original ruling.  This accusation is false since Oorah had the right to delay its payment until this issue was clarified." <u>See</u> the Official English translation of the Clarification.  Nevertheless, Plaintiff further alleges that the criticisms of Oorah only escalated following the issuance of the Clarification.  Plaintiff suggests that in a November 2007 "RJJ Newsletter," published to supporters, alumni, parents and friends of the RJJ, Schick wrote more disparaging remarks against Oorah in violation of the Non-Disparagement Agreement.  As such, because of Schick's persistent criticisms of Oorah and ongoing publication of his defamatory statements on his Internet blog, Plaintiff, with the consent of the Bais Din, sought civil recourse in this Court.

In the Complaint, Plaintiff asserts three separate counts: (1) breach of contract; (2) promissory estoppel; and (3) confirmation of the arbitration award issued by the Bais Din.  In the instant matter, Defendants first move to dismiss the Complaint in its entirety based upon procedural grounds.  In that regard, Defendants argue that the Court lacks personal jurisdiction over them.  Substantively, Defendants maintain that Plaintiff fails to state a claim with respect to Counts I and II, and inappropriately sues defendant Schick in his personal capacity.  However, since the Court finds no personal jurisdiction exists,  the merits of Defendant's motion to dismiss for failure to state a claim are not addressed here.

### DISCUSSION

### I.       Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Recently, in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough

factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

## II.     Personal Jurisdiction

This Court has subject matter jurisdiction because Plaintiff is a New Jersey corporation whose principal place of business is in New Jersey, Defendants are all citizens of New York, and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. §§ 1332, 1441; Nat'l S.S. Co. v. Tugman, 106 U.S. 118, 121 (1882).  However, with respect to personal jurisdiction, once challenged, Plaintiff bears the burden of establishing personal jurisdiction.  General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Nonetheless, since this Court did not hold an evidentiary hearing, Plaintiff need only establish a prima facie case of personal jurisdiction and Plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in his favor.  Miller Yacht Sales, Inc. v. Smit, 384 F.3d 93, 97 (3d Cir. 2004).

Under Fed. R. Civ. P. 4(k), a district court typically exercises personal jurisdiction according to the law of the state where it sits.  See Fed. R. Civ. P. 4(k)(1)(A).  In this instance, the New Jersey long-arm statute applies, and it specifically allows and extends New Jersey's jurisdictional reach to the fullest limits permitted by the U.S. Constitution, subject only to due process of law.  Osteotech, Inc. v. Gensci Regeneration Sci., Inc., 6 F.Supp. 2d 349, 352 (D.N.J. 1998) (citing Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 469 (1986)).  Accordingly, in determining whether personal jurisdiction exists, under the Due Process Clause, the inquiry is whether Defendants have "certain minimum contacts with . . . [New Jersey] such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice."  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(internal quotation omitted).  Applying New Jersey's long arm statute, the Court next turns to whether it has general or specific jurisdiction over Defendants.

A.    Specific Jurisdiction

The inquiry as to which specific jurisdiction exists has three parts.  First, Defendants must have "purposefully directed [their] activities" at the forum.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(quotation marks omitted).  Second, the litigation must "arise out of or relate to" at least one of those activities.  Helicopteros, 466 U.S. at 414; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994).  Finally, if the prior two requirements are meet, the Court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

At the threshold level, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Physical entrance is not required.  See Burger King, 472 U.S. at 476.  But what is necessary is a deliberate targeting of the forum.  O'Connor v. Sandy Lane Hotel Co., Ltd., No. 05-3288, 2007 U.S. App. LEXIS 17932, at *7 (3d Cir. Jul. 26, 2007).  Thus, the "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient.  See Hanson, 357 U.S. 253.  Further, contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself.  See Gehling, 773 F.2d 542-43.  Moreover, the jurisdictional nexus must also be the result of intentional conduct by the defendant and not merely "random, fortuitous, or attenuated contacts." Amberson Holdings v. Westside Story Newspaper, 110 F.Supp.2d 332, 334 (D.N.J. 2000)(internal quotation omitted).

7

Particularly in contract cases, "courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." GE v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)(citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)).  Parties who "reach out beyond [their] state and create continuing relationships and obligations with citizens of another state" are subject to the regulations of their activity in that undertaking. Burger King, 471 U.S. at 473 (quotations omitted). Courts are not reluctant to find personal jurisdiction in such instances. "Modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity . .. ." Id. at 474.

Specific jurisdiction frequently depends on physical contacts with the forum. GE, 270 F.3d at 150.   Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination. Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001).  In modern commercial business arrangements, however, communication by electronic facilities, rather than physical presence, is the rule.  Where these types of long-term relationships have been established, actual territorial presence becomes less determinative. Burger King, 471 U.S. at 476.  It is not significant that one or the other party initiated the relationship. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992). In the commercial milieu, "the intention to establish a common venture extending over a substantial period of time is a more important consideration." GE, 270 F.3d at 151.

 To establish specific jurisdiction, Plaintiff asserts that Schick, on behalf of RJJ and JFS, entered into a series of contracts with Oorah, and these contracts were negotiated and executed over a prolonged period of time.  Plaintiff further asserts that Defendants accepted hundreds of thousands

8

of dollars from Oorah in the form of innumerable New Jersey checks drawing on New Jersey bank accounts. In this regard, Plaintiff maintains that Defendants intentionally and repeatedly interacted with Oorah in New Jersey, thus, made it foreseeable that Defendants might become subject to a lawsuit in New Jersey for claims arising out of those specific contracts.

On the other hand, Defendants' response is essentially based upon the fact that the relationship between the two parties arose from the contract relating to the placement of students in JFS. Undisputedly, students sponsored by Oorah, who have been placed in JFS, are Staten Island residents. As Schick's Certification states, other than one instance in April 2006, RJJ had no contact with Oorah in New Jersey. See Schick's Reply Cert. at ¶ 9. All the other interactions that Schick had with Oorah took place in New York with Oorah's president, Rabbi Chaim Mintz, who lives and works in New York  See Goldstein's Reply Aff. at ¶ 5.

Examining the jurisdictional record before the Court, Plaintiff fails to establish voluntary acts by any defendant which are sufficient to find in personam jurisdiction. Here, all the contractual negotiations between Orah and Defendants , and the eventual execution of those contracts, occurred in New York. Indeed, it is undisputed that the arbitration proceedings and events that led to the arbitration took place in New York. While the Third Circuit has recognized that "due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised, " Grand Entertainment Group LTD v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993), "courts must also look into 'prior negotiations and contemplated future consequences.'" Id. (quoting Quill Corp. v. North Dakota, 504 U.S. 298, 307 (1992)). In other words, contrary to Plaintiff's argument, specific jurisdiction cannot be premised upon a mere contract with non-residents of the forum, i.e., Defendants; instead, it must be based upon voluntary acts committed by Defendants purposely

availing them to the jurisdiction of this Court.  Certainly, RJ J and JFS, New York corporations, did

not contemplate being hailed into New Jersey courts when the Oorah-sponsored students, who were

placed in JFS, resided in Staten Island, New York.  See Goldstein Reply Aff. at ¶ 2.  Likewise,

Schick's business dealings with Oorah solely took place in New York.  Accordingly, the business

relationship between Oorah and Defendants was not established as a result of Defendants' consistent

outreach in New Jersey, but rather, it arose out of Oorah's pursuit of sponsoring students in New

York.  Moreover, although Defendants concede that one meeting between the parties occurred in

New Jersey, such activity is not an voluntary act that would submit Defendants to this Court's

jurisdiction.  Instead, the meeting was a compromise to discuss the contractual dispute between the

parties.[2]  See, e.g., Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 557 (3d

Cir. 1993).

     In its pursuit to establish jurisdiction, Plaintiff relies heavily on Reynolds Publrs v. Graphics

Fin. Group, 938 F. Supp. 256 (D.N.J. 1996), to convince the Court that the parties' relationship here

mirrors of that in Reynolds, and thus, the "consequences of an ongoing commitment with customers

located in New Jersey should have been contemplated by the defendants."  Plaintiff's comparison

misses the mark.   In Reynolds, personal jurisdiction was appropriate in an action involving

equipment located in New Jersey, leased to a New Jersey corporation.  Id. at 260.  Under those

specific circumstances, the court there held that the defendant's ongoing course of dealings with a

---

     [2]Plaintiff, in its Brief in Opposition to Defendants' Motion to Dismiss, asserts in a conclusory manner that Defendants knowingly and repeatedly interacted with Oorah in New Jersey; such statement directly contradicts the facts set forth by Defendants in their affidavit and certification.  As Plaintiff bears the burden of presenting a prima facia case of personal jurisdiction, the Court cannot credit such baseless and unattested assertion.  More importantly, Plaintiff tacitly admits to the conduct of the parties' business dealings as it fails to dispute Defendants' specific factual averments regarding such conduct.

New Jersey corporation, concerning property located in New Jersey, spanning a number of years, and five separate lease agreements, were sufficient to justify the exercise of personal jurisdiction.  Id. The facts of this case do not rise to the level of the contacts by the defendants in Reynolds.  This litigation does not involve any New Jersey property, and at most, involves one agreement with a New Jersey corporation concerning students in New York.  Furthermore, the arbitration agreement in dispute was entered into in New York, along with the proceedings held in that state.

Equally unpersuasive is Plaintiff's contention that specific jurisdiction can be established by the payments made to Defendants for tuition, which were drawn from New Jersey bank accounts. As the Supreme Court held in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984), the acceptance of checks drawn on a bank in the form state "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  Id. at 416-17 ("[c]ommon sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer").[3]  Based on the totality of Defendants' conduct, the Court does not find that Defendants here have purposely reached out beyond their state to pursue a business relationship with Plaintiff, which would otherwise subject them to the regulation of their activities in New Jersey.

---

[3]Indeed, Helicopteros held that a trip to Texas by a corporation's Chief Executive Officer to negotiate a contract, that corporation's purchase of helicopters, equipment and training services from a Texas corporation "for substantial sums," and its sending employees to Texas for training, were insufficient to allow a Texas Court to assert personal jurisdiction over that out-of-state corporation.  Id.

B.   General Jurisdiction

Alternatively, the Court may assert personal jurisdiction over Defendants through general jurisdiction.  See Helicopteros, 466 U.S. 408, 414-15 & n.9 (1984).  General jurisdiction allows a court to assert personal jurisdiction over an out-of-court defendant when "that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum." Mellon Bank P.S.F.S. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). The assertion of general jurisdiction over non-forum related activities is proper when the defendant has engaged in "systematic and continuous" activities in the forum state. Helicopteros, 466 U.S. at 414-16.

Here, Plaintiff attempts to establish general jurisdiction by claiming that the involvement of Schick and RJJ with NJ RJJ's activities in Edison, New Jersey, is sufficient to find their conduct "systematic and continuous."  In that connection, Plaintiff contends that by virtue of the fact Schick is the president of NJ RJJ and that RJJ and NJ RJJ are one entity, the Court has jurisdiction over them.   Defendants rebut these contentions by asserting that none of the defendants have contacts with New Jersey that can be deemed "continuous and systematic."  Specifically, JFS operates a religious school in Staten Island, New York and has no activities in New Jersey.[4]  It does not maintain an office, place of business, mailing address, or telephone number in New Jersey. Similarly, RJJ, a New York corporation, operates religious schools in Staten Island and does not maintain an office, place of business, mailing address, or telephone number in New Jersey.

_____

[4]Plaintiff maintains that the Court has general jurisdiction over RJJ and Schick, but nowhere does Plaintiff argue the same regarding JFS.  It appears that Plaintiff only relies on the notion of specific jurisdiction to establish the right to sue JFS in this forum.

12

Moreover, Schick is a citizen of New York.  See Goldstein's Aff. at ¶ 2; Schick's Reply Aff. at ¶¶ 3-5.  Defendants also contest that RJJ and NJ RJJ are one entity.

With respect to Plaintiff's characterization of NJ RJJ and RJJ as one entity, the Court finds this contention untenable.  The starting point of this inquiry can be found in the Affidavit of Schick, wherein he made clear that the Edison, New Jersey school referred to by Oorah is operated not by RJJ but by NJ RJJ, a separate and distinct corporate entity.  See Schick's Reply Aff. at ¶¶ 3-5. Indeed, Defendants present two separate corporate charters, one from New York, another from New Jersey, as evidence of their independence.  In order for Plaintiff to show there is such a connection between the two corporations, Plaintiff must plead either that NJ RJJ is an agent or alter ego of RJJ. See Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004).  Surveying the Complaint, there are no such allegations.  It appears, however, Plaintiff's sole basis for Oorah's attempt to impute the activities of NJ RJJ to RJJ is Schick's statements in the RJJ Newsletter that refer to RJJ and RJJ NJ together.  See http://jlaw.com/Commentary/theneedinternal.html ("RJJ [] is tied to three Staten Island elementary schools (plus, of course, the Edison mesivta and beth medrash) . . .").  In addition, Plaintiff cites the following passage written by Schick on the Internet:

> The fact that RJJ has been hurt is not a sufficient reason for anyone else to care. Each cause must stand on its own merit.  Our [RJJ'S] four schools and 1,100 students form an arrangement that I believe is unprecedented in American Jewish life.  There are two core schools on Staten Island, separately for boys and girls, and an advanced dormitory yeshiva and Beth Medrash in Edison, New Jersey that [is] regarded as one of the best in the country.

See http://mschick.blogsopt.com/2001/12/reply-and-appeal.html.

Indeed, there is no real dispute that NJ RJJ and RJJ are separate legal entities, have separate budgets, operations and employees, a different board of directors, different bank accounts and

different office locations.  See Plaintiff's Opposition Brief to Defendants' Motion to Dismiss at p. 4; see also Schick Reply Aff. at ¶ 7.  Even construing the Complaint in the most favorable light, Plaintiff's citations provide insufficient legal basis for the Court to find that RJJ and NJ RJJ are one entity for jurisdictional purposes.

Plaintiff next argues that the Court has general jurisdiction over Schick because of his capacity as an officer of NJ RJJ, which is not a party to this litigation.  The Third Circuit has made clear: "It is axiomatic that 'jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction in' a particular forum."  MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 Fed. Appx. 844, 850 (3d Cir. 2003); see also Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984).  In other words, a person generally acting as an agent on behalf of a corporation is not individually subject to personal jurisdiction merely based on his actions in a corporate capacity.  TJS Brokerage & Co. v. Mahoney, 940 F. Supp. 784, 788-89 (E.D. Pa. 1996).  Rather, "each defendant's contacts with the forum state must be assessed individually." Keeton, 465 U.S. at 781 n.13.

To exercise jurisdiction over Schick, Plaintiff must make a prima facie showing that Schick has contacts with New Jersey, aside from his capacity as an officer in NJ RJJ.  While there is no dispute that Schick is an officer of NJ RJJ, Schick only visits New Jersey twice a year in his capacity as the president.  He is not involved in any other business activities in New Jersey, and he does not maintain an office or bank accounts, or own property in New Jersey.  See Schick's Reply Aff. at ¶¶ 6-7.  The sporadic contacts based upon Schick's activities as the corporate officer of NJ RJJ are insufficient for the Court to exert jurisdiction over him.

Nevertheless, Oorah claims that the facts here are reminiscent of those in <u>Carekeeper</u> <u>Software Development Co. v. Silver</u>, 46 F. Supp. 2d 1366 (N.D. Ga. 1999).   However, in <u>Carekeeper</u>, the defendant, a former officer and employee of the plaintiff, a Georgia corporation, was in Atlanta on company business at least 55 days of his eight months of employment with the plaintiff, and, the court found, he was "essentially telecommunicating" with the plaintiff's Atlanta office on a daily basis.  <u>Id.</u> at 1370.  Additionally, the defendant's activities in the forum state were conducted in his individual capacity as an employee, and the court found the defendant's employment relationship with the plaintiff to be "related to" Georgia, so that specific jurisdiction over the defendant was found to be present.  <u>Id.</u> at 1371.  In contrast, whatever activities Schick engages in on behalf of NJ RJJ does not suffice for specific jurisdiction or general jurisdiction, inasmuch as NJ RJJ is indisputably not a party to this case, to the dispute with Oorah, or to last year's arbitration with Oorah.[5]  More Importantly, Oorah has failed to allege any New Jersey based activities by Schick taken in his individual capacity.  Considering the lack of any allegation that Schick had the requisite minimum contacts in his individual capacity, this Court cannot find that either specific or general jurisdiction exists over him.

In lieu of dismissal, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) , the Court will transfer this case to the United States District Court for the Eastern District of New York in the interests of justice.  <u>See</u> 28 U.S.C. § 1404(a).  Furthermore, because Plaintiff brought this case in the incorrect forum, it is appropriate for the Court to transfer it to the forum where it could have originally been brought.  <u>See</u> 28 U.S.C. § 1406(a); <u>see also</u> <u>Gehling v. St. George's Sch. of Med., Ltd.</u>, 773 F.2d 539,

---

[5]Additionally, Plaintiff cites passages from the Newsletter to show that Schick had substantial hands-on involvement with the operation and promotion of NJ RJJ.

15

544 (3d Cir. 1985)(District Court's finding that it did not have jurisdiction over the defendant does not prevent the case from being transferred to the forum where it could have originally been brought).

## CONCLUSION

For the reasons outlined above, Plaintiff failed to establish a prima facie case of personal jurisdiction over Defendants.  However, in lieu of dismissal, this case shall be transferred to United States District Court for the Eastern District of New York.  In so doing, the Court does not consider the merits of Defendant's motion that Plaintiff has failed to state a claim.

DATED: January 26, 2009

_____/s/   Freda L. Wolfson_____
The Honorable Freda L. Wolfson
United States District Judge